1

Judge Ronald B. Leighton

2

3

4

5

6

7              UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
8                       AT TACOMA

9    UNITED STATES OF AMERICA,          )
                                        )        NO. CR 10-5294RBL
10                   Plaintiff,         )
                                        )
11          v.                          )        GOVERNMENT'S
                                        )        SENTENCING
12                                      )        MEMORANDUM
     JOSHUA ROBERT STARNES,             )
13                                      )
                     Defendant.         )
14   _____)

15          Joshua Robert Starnes traded images of children being sadistically abused.  But Mr.

16   Starnes did not merely possess and distribute images of abuse -- he also wrote and posted

17   graphic descriptions about his own desires to inflict sadistic abuse on children.  The

18   conduct of Mr. Starnes is disturbing.  Because of the nature of his offense and the need to

19   protect the public, Mr. Starnes should serve a lengthy prison term of 15 years and he

20   should be placed on supervised release for the rest of his life.

21   I        **FACTUAL BACKGROUND**

22          A.       The Investigation of "Sabin" a/k/a Joshua Robert Starnes

23          A law enforcement "source of information" maintains a website that allows

24   individuals to chat about their interests in young boys and girls.  In late 2009, law

25   enforcement attempted to identify an individual who was posting on that website under the

26   name "Sabin."  Sabin was identified as 22-year-old Joshua Robert Starnes of Olympia,

27   Washington. Mr. Starnes came to the attention of law enforcement because he had posted

28   a story about molesting a pre-school student; he had traded child pornography with others;

GOVERNMENT SENTENCING MEMORANDUM/STARNES -1
CR 10-5294RBL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970) 553-7970

1   and he had also chatted about his interest in molesting, raping, and otherwise assaulting

2   young boys.

3        Numerous disturbing posts and examples of illegal trading of child pornography by

4   Mr. Starnes images were uncovered by investigators.  For example, Mr. Starnes posted

5   claims to have touched a four-year-old boy.  Mr. Starnes claimed to have touched this boy

6   when the boy was a preschool student.  Mr. Starnes posted a picture of the boy and posted

7   that the four-year-old was "soooo sexy."  *See* Presentence Report ("PSR"), Paragraph 9.

8   The defense has not objected to facts in the PSR.

9        Investigators found that Mr. Starnes chatted extensively about his sexual interests in

10  young boys, usually chatting while trading child pornography. Mr. Starnes would send

11  child pornography to others using internet messenger services.  The following excerpts are

12  examples of the chats between Mr. Starnes and others that were collected during this

13  investigation (more chats are detailed in the PSR):

14       On November 16, 2009, Starnes chatted that "I think that are [sic] lots of boys out

15  there   who would totally be up for a sexual relationship, its just a matter of finding them".

16  *See* PSR, Paragraph 10.

17       On November 21, 2009, Starnes chatted that "i know if i had a baby and could get

18  away with doing anything to him, i probably wouldnt be able to resist ... honestly i might

19  get pretty violent ..."  *See* PSR, Paragraph 13.

20       Finally, on Dec. 29, 2009, Mr. Starnes sent a gruesome story, <u>that Starnes wrote</u>,

21  about raping and then killing two young boys.  The story is told from the perspective of a

22  22-year-old man, "Ryan," who babysits two boys, a six-year-old and a two-year-old.  The

23  story starts describing acts of child molestation and rape but gets increasingly violent until

24  the protagonist Ryan kills both boys.  In this story, Ryan and the six-year-old viciously

25  assault and kill the two-year-old by breaking the child's bones and fracturing his skull.

26  Then, Ryan proceeds to assault and then murder the six-year-old.  The story describes, in

27  explicit detail, the rage and arousal felt by the protagonist.  *See* PSR, Paragraph 17.

28  //

GOVERNMENT SENTENCING MEMORANDUM/STARNES -2
CR 10-5294RBL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970) 553-7970

B.      The Arrest of Mr. Starnes

        Immediately after learning about Mr. Starnes's story, the Washington State Patrol
(WSP) obtained a search warrant for Mr. Starnes's home in Olympia.  The search warrant
was served on December 31, 2009, and Mr. Starnes was arrested that same day.  Mr.
Starnes gave a statement to the WSP Troopers at the scene and said that he had
approximately 50,000 images and 100 videos of child pornography on his computer.  He
admitted he had been trading child pornography for over a year.  Starnes explained that he
was attracted to young boys under the age of 13.  Starnes said he fantasized about boys
every day.  But Mr. Starnes claimed that he would not hurt a kid and "that's why I stay
home every day."  He claimed that he had a strong will that would allow him to control his
urges.  *See* PSR, Paragraph 20; Exhibits 1, Declaration of Brian Werner; Exhibit 2,
Excerpts of 12/31/09 Starnes Interview.

        Mr. Starnes was arrested on the scene and transported to Thurston County Jail.  His
computer media was seized and searched by the WSP.

C.      Mr. Starnes's Computer Media

        Mr. Starnes's computer was reviewed and thousands of images of child
pornography were discovered.  By the investigators' count, the computer contained over
34,000 images and 291 video files of child pornography.  *See* PSR, Paragraph 21.  Mr.
Starnes's computer also contained a folder with over 100 images of preschool students,
including a picture of the four-year-old boy that Starnes claimed to have touched.

        The computer forensic review also showed that Mr. Starnes transported child
pornography on December 2, 2009, when he entered into an internet chat session with two
other users, using the "goober" messenger program.  During this chat, Mr. Starnes
distributed images of young boys being sexually assaulted to these other users through his
computer's internet connection.  Specifically, Mr. Starnes distributed an image of a four-
to-six year-old boy holding the erect penis of the adult male; an image of an adult male
penetrating a four-to-six year-old boy's anal area, and an image of a six-to-eight year-old
boy with a foreign object against the boy's anal area.

1        D.      Mr. Starnes's Indictment and Guilty Plea

2        In April 2010, the state charges were dismissed and Mr. Starnes was indicted by a

3   federal grand jury on April 27, 2010, on counts of Transportation of Child Pornography

4   and Possession of Child Pornography.  Mr. Starnes appeared in federal court on these

5   charges in April, and on May 3, 2010, he was ordered detained.  Mr. Starnes pleaded

6   guilty to the Transportation count on October 5, 2010.

7        E.      Mr. Starnes's Psycho-Sexual Evaluations

8        Mr. Starnes was not required to participate in a psycho-sexual evaluation as part of

9   his plea agreement in this case.  However, Mr. Starnes participated in two such evaluations

10  since the time of his arrest.  The first evaluation was with Sue Batson and Associates and

11  the second evaluation was with Michael Comte & Associates.  Both evaluations were

12  provided to the prosecution, the Probation Office, and the Court.

13  **II      SENTENCING FACTORS**

14       A sentencing court considers the Sentencing Guidelines as well as factors set forth

15  in Title 18, United States Code, Section 3553(a).  *See United States v. Blinkinsop*, 606

16  F.3d 1110, 1114 (9th Cir. 2010) (describing proper Ninth Circuit sentencing procedure and

17  upholding 97-month sentence for receipt of child pornography).  Although every Section

18  3553(a) factor should be examined, the government will address the following in this

19  sentencing memorandum: (A) the nature and circumstances of the offense; (B) the types of

20  sentences available and the sentencing guideline range established; (C) the need to protect

21  the public from future crimes of the defendant; and (D) the history and characteristics of

22  the defendant and the need to avoid unwarranted sentence disparity.

23       A.      The Nature and Circumstances of the Offense

24       Mr. Starnes pleaded guilty to distributing (transporting in interstate commerce) at

25  least three different images of the sexual abuse of young boys.  *See* Plea Agreement (Dckt.

26  #22).  In fact, Mr. Starnes possessed more than 34,000 child pornography files.  Mr.

27  Starnes also estimated that he had been trading child pornography for about a year.

28  Therefore, the full scope of Mr. Starnes's conduct is unknown; it is unknown how many

GOVERNMENT SENTENCING MEMORANDUM/STARNES -4
CR 10-5294RBL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970) 553-7970

1   different images he transferred to how many different users, and, in turn, how many times

2   those images were re-distributed.

3        These child pornography images and videos depict real children being raped.  These

4   images, every time they are viewed, and every time they are traded, inflict further abuse.

5   The distribution of child pornography serves to prolong the effects of the initial rape.

6   These child victims have to suffer with the pictures (or sometimes videos) of their horrible

7   abuse being traded across the internet.  The evidence of these crimes cannot be "sealed" by

8   a court, it lives on the internet.  Mr. Starnes reinforced and aggravated these wounds by

9   circulating these images.

10        Also, the distribution and possession of child pornography keeps the market for this

11   type of material thriving, and leads to circumstances where more of this material is

12   created.  When he was arrested, Mr. Starnes told the State Patrol that producers of child

13   pornography will "continue to make it regardless if I look at it or not."  *See* PSR,

14   Paragraph 20.  Mr. Starnes is incorrect if he believes that consumers of child pornography

15   play no role in the creation of child pornography, some child pornography is "made-for-

16   trade" for other child pornography.

17        B.    The Types of Sentences Available and Sentencing Guideline Range

18        Although the sentencing guidelines are no longer mandatory but advisory, the

19   guidelines provide useful guidance for a sentencing court.  Most of the sentencing factors

20   are agreed upon by the parties:  the base offense level for the crime of transportation of

21   child pornography (22); the offense involved pre-pubescent minors under the age of 12

22   (+2); the offense involved sadistic and/or masochistic conduct (+4); the offense involved

23   the use of a computer (+2); and the offense involved the possession of more than 600

24   images (+5).  *See* Plea Agreement (Dckt. #22).  The agreed offense level is at least 35.

25        The government and the Probation Office contend that another five-point addition

26   applies to reflect the type of distribution by the Defendant, i.e., "distribution for the

27   receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain."  U.S.S.G.

28   § 2G2.2(b)(3)(B).  The defense apparently objects.  This characteristic is explained in the

GOVERNMENT SENTENCING MEMORANDUM/STARNES -5
CR 10-5294RBL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970) 553-7970

1    Commentary as "in a case involving the bartering of child pornographic material, the

2    "thing of value" is the child pornographic material received in exchange for other child

3    pornographic material bartered in consideration ..."

4       This offense characteristic applies in this case.  In a November 19, 2009, chat, Mr.

5    Starnes stated that he had explicit agreements to share child pornography with others, and

6    therefore he distributed and received child pornography in expectation of receiving more

7    child pornography.  "That [sic] why i have a few different buddies that i have agreements

8    with to share everything we have so we all maximize our collections."  *See* PSR,

9    Paragraph 12.  The defense has not objected to the facts contained in the PSR.

10       When Mr. Starnes was interviewed by the Washington State Patrol, he confirmed

11   that he had actually sent images and received images of child pornography.  *See* Exhibit 2,

12   Excerpts of 12/31/09 Starnes Interview.  In that interview, Mr. Starnes estimated he has

13   more than 50,000 images on his computer.  *See* Exhibit 2, page 0055 at lines 18-21.  Mr.

14   Starnes also stated that he has sent images and received images.  Exhibit 2, page 0055 at

15   lines 5-9.  Mr. Starnes also stated that he had been trading child pornography for over a

16   year.  *See* PSR, Paragraph 19.

17       Therefore, the appropriate offense level in this case is 40 (37 with acceptance of

18   responsibility) and the appropriate criminal history category is I.  The guideline range of

19   imprisonment is therefore 210-262 months, but the statutory maximum is 240 months, so

20   the appropriate guideline range is 210-240.  A sentence within this guideline range is an

21   appropriate term of imprisonment because the range captures the severity of Mr. Starnes's

22   conduct.  For example, Mr. Starnes possessed, traded, and chatted about sadistic and

23   masochistic images, leading to a four-point increase in his offense level.  This increase is

24   appropriate because Starnes was obviously fascinated with the sadistic abuse of young

25   boys -- he traded images of the rape of infants while discussing how he would not be able

26   to resist raping an infant himself.  This conduct shows Mr. Starnes is a danger to the public

27   and a lengthier term of incarceration is needed.

28       A lengthy term of imprisonment will also give Mr. Starnes ample time to receive

GOVERNMENT SENTENCING MEMORANDUM/STARNES -6
CR 10-5294RBL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970) 553-7970

sex offender counseling from the Bureau of Prisons.  Sex offender treatment is available in the BOP and the Court may recommend it in this case.

C.    To Protect the Public From Further Offenses of the Defendant

Mr. Starnes should be sentenced to a lengthy prison term to protect the public from future crimes.  Mr. Starnes is a high risk to commit further crimes because of his addiction to child pornography and because of his violent sexual abuse fantasies.  The defense may claim that Mr. Starnes is not truly dangerous and that his posts about the rape and abuse of children were just "puffing" to impress others. In evaluating the risk posed by Mr. Starnes, it is important to evaluate his statements in the context they were made, especially those statements made before he was criminally charged.

In November 2009, before he was facing prison time, Mr. Starnes posted that he believed there were boys out there who wanted to be involved in sexual relationships.  He posted about his desires to be with a boy (PSR, Paragraph 10) and about his fantasies, which included wanting to see the rape of a small child (PSR, Paragraph 11), wanting to violate a small child with foreign objects (PSR, Paragraph 11), and about how he couldn't "resist" wanting to rape an infant (PSR, Paragraph 13).  The culmination of Starnes's sick mind is shown in his story of "Ryan," the 22-year-old who rapes and kills two young boys. The fact that Starnes wrote this story, coupled with his interests in child pornography, his other comments and posts, and his touching of the four-year-old (discussed below), demonstrates he is very dangerous.

Also, Mr. Starnes's statements to the WSP troopers at the time of his arrest show Mr. Starnes's dangerousness.  When Mr. Starnes was asked whether he looks for adults or minors to chat on the internet, he claimed only adults because he would not hurt a kid. Tellingly, he continued "That's why I stay home every day."  Exhibit 2, Excerpts of Starnes Interview, page 0054, lines 20-24, page 0055, lines 1-4.  Starnes was asked how often he fantasizes about boys and he replied "every day."  He claimed, however, that he had a "strong will to control myself."  Exhibit 2, page 0062, lines 6-10.  Mr. Starnes, even when confronted by the Washington State Patrol, admitted that he had strong urges to

GOVERNMENT SENTENCING MEMORANDUM/STARNES -7
CR 10-5294RBL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970) 553-7970

1  harm children.

2       Even Mr. Starnes's current statements to this Court demonstrate that he is still a

3  danger.  Starnes explained that he was attracted to child pornography because of the

4  "emotional" response it created in him.  This emotional response led Mr. Starnes deeper

5  and deeper into the world of child pornography.  At the time of Mr. Starnes's arrest in

6  December 2009, he had escalated his conduct from posting about child pornography

7  images to composing entire stories about the rape and murder of children.  The "emotion"

8  that the visual depictions and stories provide to Mr. Starnes is exactly what makes him so

9  dangerous and he should be incarcerated away from society.

10       Finally, the evidence that Mr. Starnes poses a risk of touching a boy is supported by

11  the evidence that Mr. Starnes, in fact, inappropriately touched a four-year-old boy.  Mr.

12  Starnes claimed to have touched the boy during a field trip when Mr. Starnes was

13  supervising the minor boy.  Before he was arrested, Starnes was very proud of his

14  encounter with the four-year-old, calling the boy "sexy" and wishing that Starnes could

15  have abused the boy further.  *See* PSR, Paragraph 9.  Mr. Starnes committed an

16  inappropriate touching in the past and he is a risk to commit the same sort of offense in the

17  future.  Mr. Starnes must be incarcerated for a multi-year prison term to protect the public

18  from future crimes.

19       Moreover, in order to protect the public from further sex offenses, both child

20  pornography and hands-on offenses, the government recommends a lifetime of supervised

21  release.  Section 3583(k) of Title 18 authorizes lifetime supervised release to be imposed

22  on a defendant convicted of Transportation of Child Pornography.

23       D.    The History and Characteristics of the Defendant and The Need to Avoid

24  Sentencing Disparity

25       All of the above factors counsel for a long prison sentence, indeed, the sentencing

26  guidelines suggest a sentence between 210 and 240 months.  However, Mr. Starnes does

27  not have any criminal history and is only 23 years old.  Besides his youth and his lack of

28  criminal history, there is little other mitigation found in Mr. Starnes's personal

1   characteristics.  He has been unemployed for the past three years and has decided to forego

2   interaction with the rest of society.

3          In this District, child pornography offenders are rarely sentenced within the

4   guidelines.  The case of Mr. Starnes cannot easily be compared to other cases, because the

5   facts and circumstances of this offense are different than the facts and circumstances of

6   other offenses.  Moreover, the psycho-sexual evaluations of Mr. Starnes are different than

7   other evaluations of defendants charged with the same crimes.

8          But still, in recognition of Mr. Starnes youth, lack of criminal history, and the

9   severity of a guideline sentence, the government recommends a sentence of 180 months of

10  imprisonment.

11  **III      SENTENCING RECOMMENDATION**

12         For all the foregoing reasons, the United States recommends this Court sentence

13  Mr. Starnes to a term of 15 years imprisonment and supervised release for the rest of his

14  life.

15         DATED this 7th day of February, 2011.

16                                              Respectfully submitted,

17                                              JENNY A. DURKAN
                                                United States Attorney
18
                                                s/ Brian D. Werner
19                                              Brian D. Werner
                                                Assistant United States Attorney
20                                              1201 Pacific Ave., Suite 700
                                                Tacoma, WA 98402
21                                              Telephone: (253) 428-3806
                                                Fax: (253) 428-3826
22                                              E-mail: Brian.Werner@usdoj.gov
23

24

25

26

27

28

GOVERNMENT SENTENCING MEMORANDUM/STARNES -9
CR 10-5294RBL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that, on February 7, 2011, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent electronically to all counsel of record.


s/ Brian D. Werner

GOVERNMENT SENTENCING MEMORANDUM/STARNES -10
CR 10-5294RBL

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970) 553-7970